U. S. INDUSTRIES/FEDERAL SHEET METAL, INC.,
ET AL., *v.* DIRECTOR, OFFICE OF WORKERS' COM-
PENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR, ET AL.

No. 80–518.  Argued October 6, 1981—Decided March 23, 1982

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 617. O'CONNOR, J., took no part in the consideration or decision of the case.

*Richard W. Galiher, Jr.*, argued the cause for petitioners. With him on the briefs were *Richard W. Galiher, William H. Clarke*, and *Frank J. Martell.*

*James F. Green* argued the cause for respondents. With him on the brief for respondent Riley were *Karl N. Marshall, Martin E. Gerel, James A. Mannino, Mark L. Schaffer*, and *Wayne M. Mansulla.**

JUSTICE STEVENS delivered the opinion of the Court.

In the early morning of November 20, 1975, respondent Ralph Riley awoke with severe pains in his neck, shoulders, and arms, which later were attributed by physicians to an exacerbation of an arthritic condition. The United States Court of Appeals for the District of Columbia Circuit held that this "injury" was sufficient to invoke the "statutory presumption of compensability,"[1] § 20(a) of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. (part 2) 1436, 33 U. S. C. § 920(a), and vacated the administrative denial of disability benefits. We granted certiorari, 450 U. S. 979, and we now reverse.

---

*\*John C. Duncan III* filed a brief for the American Insurance Association as *amicus curiae.*

[1] "Injury" and "statutory presumption of compensability" are terms employed by the Court of Appeals. See *Riley* v. *U. S. Industries/Federal Sheet Metal, Inc.*, 200 U. S. App. D. C. 402, 627 F. 2d 455 (1980). As we explain below, the use of the term "injury" to describe Riley's early morning attack of pain is incorrect. We do not decide the scope of the § 20(a) presumption, or, *a fortiori*, the appropriateness of the Court of Appeals' characterization of it.

Contending that he was permanently and totally disabled by the arthritic condition,[2] Riley's retained counsel filed with the Deputy Commissioner a claim for compensation under the Act. See 33 U. S. C. § 913. On standard form LS–203, in response to the direction to "[d]escribe in full how the accident occurred,"[3] Riley wrote that on November 19, 1975, he was "[l]ifting duct work with co-worker, weighing approximately 500 pounds, felt sharp pain in neck and sat down." App. 111.

An evidentiary hearing was convened before an Administrative Law Judge. After construing the evidence in a light most favorable to Riley and resolving all doubts in his favor, the Administrative Law Judge found "that Claimant sustained no injury within the meaning of Sec. 2(2) of the Act on November 19, 1975, as alleged, and that Claimant and Sutherland [Riley's co-worker] gave false testimony as to the happening of the accident." App. to Pet. for Cert. 24A.

A divided panel of the Benefits Review Board affirmed the denial of disability benefits, holding that the Administrative Law Judge's findings were supported by substantial evidence. In dissent, Member Miller stated:

> "The Act does not require that claimant prove an accident in order to establish a claim. To the contrary, compensation is payable under the Act if claimant is disabled because of *injury* which is causally related to his employment. 33 U. S. C. §§ 902(10), 902(2)." 9 BRBS 936, 940 (1979) (emphasis in original).

---

[2] Apparently, it is undisputed that Riley is permanently and totally disabled. Brief for Respondent Riley 5, n.

[3] The form continues with a further instruction:

"Relate the events which resulted in the injury or occupational disease. Tell what the injured was doing at the time of the accident. Tell what happened and how it happened. Name any objects or substances involved and tell how they were involved. Give full details on all factors which led or contributed to the accident. If more space is needed, continue on reverse." App. 111.

Member Miller defined an injury as "something go[ne] wrong within the human frame." *Ibid.* Riley suffered such an injury when he awoke on November 20 with severe pain. Therefore, Member Miller would have remanded the case for a determination of "the real issue in this case," which "is not whether claimant sustained an accident at work but whether claimant's injury is causally related to his employment." *Ibid.* That determination was to be made in light of the § 20(a) presumption, which "places the burden on employer to prove by substantial evidence that claimant's injury did not arise out of or in the course of employment." *Ibid.*

On Riley's petition for review, the Court of Appeals vacated the decision of the Benefits Review Board, agreeing with Member Miller's position. *Riley v. U. S. Industries/Federal Sheet Metal, Inc.*, 200 U. S. App. D. C. 402, 627 F. 2d 455 (1980). The court stated that "it can hardly be disputed that petitioner suffered an 'injury' when he awakened in pain on November 20, 1975." *Id.*, at 405, 627 F. 2d, at 458. The court then turned its "attention to the statutory presumption and the range of situations to which this Court has applied it." *Ibid.* It construed its earlier cases as holding "that an injury need not have occurred during working hours" and "need not be traceable to any particular work-related incident to be compensable." *Id.*, at 405–406, 627 F. 2d, at 458–459.[4]

> "The foregoing cases make clear the pervasive scope of the statutory presumption of compensability. Indeed, no decision of this Court has ever failed to apply the pre-

---

[4] The cases cited by the Court of Appeals do not support this proposition. In *Butler v. District Parking Management Co.*, 124 U. S. App. D. C. 195, 363 F. 2d 682 (1966), the claimant became ill at work and the illness was diagnosed as a schizophrenic reaction. In *Wheatley v. Adler*, 132 U. S. App. D. C. 177, 407 F. 2d 307 (1968), the employee collapsed from a heart attack at work. In *Mitchell v. Woodworth*, 146 U. S. App. D. C. 21, 449 F. 2d 1097 (1971), the employee died of a cerebral vascular accident shortly after collapsing at work.

sumption to any facet of any claim before it. We now hold expressly that where a claimant has been injured, the Act requires that, in the absence of substantial evidence to the contrary, a claimant be given the benefit of a rebuttable presumption that the injury arose out of and in the course of the claimant's employment." *Id.*, at 406, 627 F. 2d, at 459.

The question for remand was not whether Riley's "injury" stemmed from a "work-related incident," but whether it was "'employment-bred.'" *Ibid.*

The Court of Appeals erred because it overlooked (1) the statutory language that relates the § 20(a) presumption to the employee's claim, and (2) the statutory definition of the term "injury."

I

The Court of Appeals' first error was its invocation of the § 20(a) presumption in support of a claim that was not made by Riley. Riley claimed that he suffered an injury at work on November 19 when he was lifting duct work and felt a sharp pain in his neck. The Administrative Law Judge found as a matter of fact that the accident had not occurred; this finding is no longer challenged. The Court of Appeals' theory of recovery was that Riley suffered an injury at home in bed on November 20 and that Riley was entitled to a presumption that this injury was "employment-bred."

Section 20(a), 44 Stat. (part 2) 1436, provides that "[i]n any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of this Act." The coverage of the presumption is debatable,[5] but one thing is clear: the pre-

---

[5] We need not resolve that debate in this case. It seems fair to assume, however, that the § 20(a) presumption is of the same nature as the presumption created by § 20(d) of the Act, 33 U. S. C. § 920(d), as construed in *Del Vecchio* v. *Bowers*, 296 U. S. 280, 285–287, and the presumption de-

sumption applies to the claim. Even if a claimant has an unfettered right to amend his claim to conform to the proof, the presumption by its terms cannot apply to a claim that has never been made.

Section 13 of the Act, 33 U. S. C. § 913, provides that a claimant must timely file a claim with the Deputy Commissioner. The content of the claim is not specified in that section. But § 12(b), 33 U. S. C. § 912(b), requires that the claimant timely give the Deputy Commissioner and his employer notice of his injury, and provides further that "[s]uch notice . . . shall contain . . . a statement of the time, place, nature, and cause of the injury."[6] The claim, like the notice required by § 12 and like the pleadings required in any type of litigation, serves the purposes of notifying the adverse party of the allegations and of confining the issues to be tried and adjudicated.[7]

---

fined in Rule 301 of the Federal Rules of Evidence. See also *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248.

[6] "This statement must be more than a mere declaration that the employee has received an injury or is suffering from an illness that is related to his employment; it must contain enough details about the nature and extent of the injury or disease to allow the employer to conduct a prompt and complete investigation of the claim so that no prejudice will ensue." 1A E. Jhirad, A. Sann, N. Golden, & B. Chase, Benedict on Admiralty § 71, p. 4–5 (7th ed. 1981).

[7] See generally F. James & G. Hazard, Civil Procedure § 2.1 (2d ed. 1977). Of course, the workmen's compensation process is much more simplified than modern civil litigation. Indeed, this is one of the hallmarks of the system:

"The adjective law of workmen's compensation, like the substantive, takes its tone from the beneficent and remedial character of the legislation. Procedure is generally summary and informal. . . . The whole idea is to get away from the cumbersome procedures and technicalities of pleading, and to reach a right decision by the shortest and quickest possible route. . . . On the other hand, as every lawyer knows, there is a point beyond which the sweeping-aside of 'technicalities' cannot go, since evidentiary and procedural rules usually have an irreducible hard core of necessary function that cannot be dispensed with in any orderly investigation of the

In Riley's claim, he alleged that he suffered an accidental injury in the course of his employment on November 19. No claim has ever been made that the "injury" occurred at home and that it was somehow "employment-bred." Even if such a vague claim stated a prima facie case of compensability, the statutory presumption does not require the administrative law judge to address and the employer to rebut every conceivable theory of recovery. At least when the claimant is represented by counsel,[8] as Riley was, there is no reason to depart from the specific statutory direction that a claim be

---

merits of a case." 3 A. Larson, The Law of Workmen's Compensation § 78.10, p. 15–2 (1976).

Professor Larson writes that an informal substitute for a claim may be acceptable if it "identif[ies] the claimant, indicate[s] that a compensable injury has occurred, and convey[s] the idea that compensation is expected," id., § 78.11, p. 15–9; that "considerable liberality is usually shown in allowing amendment of pleadings to correct . . . defects," unless the "effect is one of undue surprise or prejudice to the opposing party," id., at 15–11; and that "wide latitude is allowed" as to variance between pleading and proof, "[b]ut if the variance is so great that the defendant is prejudiced by having to deal at the hearing with an injury entirely different from the one pleaded, the variance may be held fatal," id., at 15–13—15–14. Riley had the benefit of these liberal pleading rules; nonetheless, the Court of Appeals applied the statutory presumption to a claim that was not fairly supported by the existing claim or by the evidentiary record. As Professor Larson warns, "[n]o amount of informality can alter the elementary requirement that the claimant allege and prove the substance of all essential elements in his case." Id., at 15–12.

[8] "If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final." 33 U. S. C. § 928(a).

made and that the presumption, however construed, attach to the claim.

## II

The Court of Appeals' second error was its incorrect use of the term "injury." The court stated that Riley's attack of pain in the early morning of November 20 was an "injury" compensable under the Act if the employer did not disprove by substantial evidence that the "injury" was "employment-bred." The fact that "'something unexpectedly goes wrong with the human frame,'" 200 U. S. App. D. C., at 405, 627 F. 2d, at 458 (quoting *Wheatley* v. *Adler*, 132 U. S. App. D. C. 177, 183, 407 F. 2d 307, 313 (1968)), however, does not establish an "injury" within the meaning of the Act. The mere existence of a physical impairment is plainly insufficient to shift the burden of proof to the employer.

Section 3(a) provides that "[c]ompensation shall be payable under this Act in respect of disability . . . of an employee, but only if the disability . . . results from an injury." 44 Stat. (part 2) 1426, as amended, 33 U. S. C. § 903(a). Injury is defined as an "accidental injury . . . arising out of and in the course of employment." 33 U. S. C. § 902(2). Arising "out of" *and* "in the course of" employment are separate elements: the former refers to injury causation; the latter refers to the time, place, and circumstances of the injury.[9] Not only must the injury have been caused by the employment, it also must have arisen during the employment.

A prima facie "claim for compensation," to which the statutory presumption refers, must at least allege an injury that arose in the course of employment as well as out of employment.[10] The "injury" noticed by the Court of Appeals, how-

---

[9] See, *e. g.*, *Ward & Gow* v. *Krinsky*, 259 U. S. 503; *Thom* v. *Sinclair*, [1917] A. C. 127; 1A Benedict on Admiralty, *supra*, § 43; 1 A. Larson, *supra*, § 6.10, at 3-2—3-3 (1978).

[10] The Act was enacted to create a federal workmen's compensation statute for maritime employments after this Court held that state workmen's compensation statutes constitutionally could not apply to injured maritime workers. See generally *Nogueira* v. *New York, N. H. & H. R. Co.*, 281

ever, arose in bed, not in the course of employment. Even if the Court of Appeals simply mislabeled the early morning attack of pain as the "injury" itself rather than as a manifestation of an earlier injury, the claim envisioned by the Court of Appeals did not allege any facts that would establish that Riley suffered an injury that arose in the course of employment. The statutory presumption is no substitute for the allegations necessary to state a prima facie case.

## III

Riley's claim stated a prima facie case of compensability; if the Administrative Law Judge had believed Riley's allegations, he would have found that Riley's attack of pain in the early morning of November 20 was caused by an injury suffered when Riley was lifting duct work on the job on November 19. The judge, however, disbelieved Riley's allegations and marshaled substantial evidence to support his findings. The statutory presumption did not require him to adjudicate any claim that was not made, and the Court of Appeals erred in remanding for that purpose. Nor could the statutory presumption have aided Riley had he made the claim envisioned by the Court of Appeals—that he suffered an "injury" at home—for such a claim omits the requirement that a compensable injury arise in the course of employment.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE O'CONNOR took no part in the consideration or decision of this case.

---

U. S. 128. Workmen's compensation legislation has never been intended to provide life or disability insurance for covered employees. The required connection between the death or disability and employment distinguishes the workmen's compensation program from such an insurance program, and the separate requirements that the injury arise out of and in the course of employment are the means for assuring, to the extent possible, that the work connection is proved. See W. Dodd, Administration of Workmen's Compensation 681 (1936); see generally *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 422–424.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I

Section 20(a) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. § 920(a), provides that "it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat [a] claim [for compensation] comes within the provisions of this chapter." The central issue before us is whether this provision requires the employer in a compensation hearing to offer "substantial evidence" refuting the existence of a causal relationship between a compensation claimant's injury and his employment. The question has been fully briefed and argued, but the Court does not address it. For me, however, the answer is clear and controls the proper disposition of this case.

By its terms, and quite in contrast to the practice in judicial proceedings, § 20(a) requires the employer to take the initial steps to disprove his liability. This preliminary shifting of the burden to the employer exemplifies the "humanitarian nature of the Act," *O'Keeffe* v. *Smith Associates*, 380 U. S. 359, 362 (1965) *(per curiam)*, and the "strong legislative policy favoring awards in arguable cases," *Wheatley* v. *Adler*, 132 U. S. App. D. C. 177, 183, 407 F. 2d 307, 313 (1968) (en banc). Section 20(a) is clearly broad enough to encompass the question of causation. "The statutory presumption applies as much to the nexus between an employee's malady and his employment activities as it does to any other aspect of a claim." *In re District of Columbia Workmen's Compensation Act*, 180 U. S. App. D. C. 216, 223, 554 F. 2d 1075, 1082 (1976). To defeat a claim for compensation, the employer must rebut the presumption of compensability by offering substantial evidence that the claim is not one "arising out of and in the course of employment." 33 U. S. C. §§ 902(2), 903; see *Marra Bros., Inc.* v. *Cardillo*, 154 F. 2d 357 (CA3 1946). Only after the employer offers such substantial evi-

dence does the presumption fall "out of the case." *Del Vecchio v. Bowers*, 296 U. S. 280, 286 (1935).

The statutory presumption thus defines the basic agenda for the hearing before the Office of Workers' Compensation Programs (OWCP), and the factfinding required before the OWCP may deny a compensation claim. In this case, there is no serious dispute that respondent Riley suffered some disabling injury.[1] See *Riley v. U. S. Industries/Federal Sheet Metal, Inc.*, 200 U. S. App. D. C. 402, 406, n. 3, 627 F. 2d 455, 459, n. 3 (1980). Riley has an arthritic neck condition, and "the pain [he] suffered . . . was due to an exacerbation of his arthritic neck condition." *Id.*, at 405, 627 F. 2d, at 458. Given the existence of this condition, and the statutory presumption, the relevant inquiry was whether the employer had shown that the condition was not sufficiently work-related to render the employer accountable.[2] No such finding was ever entered. Rather, the Administrative Law Judge and the Benefits Review Board focused exclusively on the testimony of Riley and his co-worker that something happened to Riley while lifting duct work on November 19, 1975, causing an immediate pain in his neck. The Administrative

---

[1] It may be that the opinion for the Court of Appeals suffered from failing to distinguish between the use of the term "injury" in its ordinary meaning, and in its specialized meaning under the Act. See 33 U. S. C. § 902(2). But there is absolutely no basis for the suggestion in Part II of the Court's opinion that the Court of Appeals thought it sufficient to ground a compensation claim on an "injury" that "arose in bed, not in the course of employment." *Ante*, at 616. The suggestion is plainly wrong; virtually every aspect of the opinion for the Court of Appeals reaffirms that the issue before the Administrative Law Judge and the Benefits Review Board was whether there existed some causal connection between the claimant's disability and his employment.

[2] In practice, the two tests of "arising out of" and "in the course of" tend to merge into a single determination of work-relatedness. See 1A A. Larson, The Law of Workmen's Compensation §§ 29.00–29.10, pp. 5–354— 5–357 (1979). The dissenting member of the Benefits Review Board Panel thus properly described "the real issue in this case" as "whether claimant's injury is causally related to his employment." 9 BRBS 936, 940 (1979).

Law Judge concluded only that no such incident occurred; the Benefits Review Board affirmed that finding.

Had the Administrative Law Judge credited the testimony of Riley with respect to the November 19 incident, it would surely have strengthened Riley's position that the exacerbation of his arthritic neck condition was work-related. But the finding that this incident did not occur hardly demonstrates that Riley's disability did not arise out of and in the course of employment. An injury need not be traceable to a single event at work in order to be compensable. "Even if the asserted work-related incident had never occurred, the injuries suffered by the claimant might nevertheless have been 'employment bred.'"[3] *Id.*, at 406, 627 F. 2d, at 459.

---

[3] It is surely plausible that there was a causal relation between the exacerbation of Riley's arthritic neck condition and the overhead sheet metal duct work that he was engaged in until the night he awoke in bed in pain. But however logical this connection might be in some lay sense, it could hardly assure Riley of recovery. The term "substantial" is relative, and the quantum and type of evidence required of the employer correspond to the specificity of the claimaint's evidence and allegations. The evidence necessary to overcome the presumption is least when the claim rests—as this one apparently did once the testimony respecting the November 19 accident was rejected—on little more than some arguable link between the disabling condition and the nature of the work.

There appears to be little in the abbreviated record before this Court directly supporting this broader theory of recovery. Although one physician testified that "[t]he man is certainly disabled from working," App. 130, this statement was made in the course of questioning about the possible effects of the alleged November 19 incident. Another doctor, describing Riley's condition shortly after he entered the hospital, noted: "[M]ost of his work is overhead type and involves quite a bit of hyperextention of the neck. That means that most of his work he will have to do with his neck bending upwards." *Id.*, at 158. That same doctor, however, referred repeatedly to Riley's assertion that he felt pain as a result of bending or twisting his neck while lifting duct work in November 1975, and rendered his diagnosis on that basis. See *id.*, at 162–169. Although Riley hardly proved his theory by this medical evidence, given the nature of the injury and the nature of his work, Riley clearly made the "initial demonstration of employment-connection [that] will give the presumption a foothold." 1 A. Larson, *supra*, § 10.33, at 3–121 (1978).

Absent a finding excluding this possibility, compensation could not be denied. In addition, the failure of the Administrative Law Judge to focus on the broader issue of the injury's work-relatedness suggests that he may have failed to conduct the proceedings with proper attentiveness to the basic issue in a case such as this: namely, had the claimant been disabled as a result of his employment? Because the agency did not make the crucial finding, the Court of Appeals quite properly remanded this case so that the necessary determination could be made.

## II

Rather than allow a remand so that the normal process of administrative adjudication might run its course, the Court discerns a dispositive procedural requirement within the Act. The Court places its emphasis on the language of § 20(a):

> "In any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat *the claim* comes within the provisions of this Act." (Emphasis added.)

Unremarkably, the Court reads this language as applying the presumption to the "claim for compensation." But quite remarkably, and without any support in precedent or the language of the Act, the Court construes the words "claim for compensation" to mean some sort of legal document, or at least some stated theory, setting forth a prima facie case for compensation, upon which all further proceedings must be based, and to which the presumption may attach.

The Court appears to glean its understanding of the word "claim" from the meaning assigned to the term "claim for relief" by Rule 8(a) of the Federal Rules of Civil Procedure. The Court concedes, as it must, that this understanding of the word "claim" finds no direct authority in the LHWCA itself. The Act does require the employee to file a timely "claim" with the Deputy Commissioner. 33 U. S. C.

§ 913(a).  See *ante*, at 613.  But it is clear that the referred-to "claim" is nothing more than a simple request for payment,[4] carrying with it the implicit assertion of an entitlement to compensation.  To the extent an allegation of "time, place, nature, and cause of injury" is statutorily required, it is only in connection with the *notice* to the employer referred to by § 12.[5]  33 U. S. C. § 912.

Moreover, the Court's reliance on a written pleading requirement is wholly out of step with the sensible informality with which the Act is administered.[6]  Under the present regime of administrative enforcement, issues are not narrowed through pleadings, but rather through a mixture of formal

---

[4] This definition of "claim" comports with its accustomed meaning in the context of comparable compensation statutes.  For example, "claim" is defined for purposes of the Federal Mine Safety and Health Act of 1977, 30 U. S. C. § 801 *et seq.* (1976 ed. and Supp. IV), as "a written assertion of entitlement to benefits under [the Act], submitted in a form and manner authorized by the provisions of this subchapter."  20 CFR § 725.101(a)(16) (1981).  See also 20 CFR § 10.5(a)(7) (1981) (Federal Employees' Compensation Act, 5 U. S. C. § 8101 *et seq.*).

[5] The Court's reliance on the notice requirement of § 12 to suggest that the *claim* encompass some allegation of "time, place, and manner," so that the Court can in turn conclude that the statutory presumption applies to what is alleged in the "claim," is a patchwork job.  The "claim" is something entirely apart from the § 12 notice.  Indeed, § 12(d) employs the very distinction that the Court seeks to blur: "Failure to give such *notice* shall not bar any *claim* under this chapter" where the employer had actual notice, the Deputy Commissioner excuses such notice, or where no objection was raised to the failure "before the deputy commissioner at the first hearing of a claim for compensation . . . ."  33 U. S. C. § 912(d).

[6] For example, the regulations provide that "[t]he order in which evidence and allegations shall be presented and the procedures at the hearings generally . . . shall be in the discretion of the administrative law judge and of such nature as to afford the parties a reasonable opportunity for a fair hearing."  20 CFR § 702.338 (1981).  That same regulation provides that "[i]f the adminstrative law judge believes that there is relevant and material evidence available which has not been presented at the hearing, he may . . . at any time, prior to the filing of the compensation order, reopen the hearing for the receipt of such evidence."

and informal prehearing procedures. 20 CFR §§ 702.311–702.317 (1981). The regulations governing the administration of the Act reflect the method chosen by the agency charged with administering the Act for addressing the practical problems of issue narrowing that inevitably arise in the course of administrative proceedings. In addition to the prehearing conference report, which sets forth the issues for the hearing, the parties are required to submit a prehearing statement defining the issues to be considered. See § 702.317. Nevertheless, the employee's failure to raise a particular issue at the prehearing conference, or in his prehearing statement, does not preclude him from raising that issue at the formal hearing. See § 702.336(a). In addition, "[a]t any time prior to the filing of the compensation order . . . the administrative law judge may in his discretion" reopen the hearing to consider a new issue. § 702.336(b).[7]

Apparently the Court is of the view that its imported definition of "claim" is necessary to protect employers from being called into a compensation hearing without any warning of the basis upon which compensation is sought; on this argument, the employer would otherwise be forced to offer evidence refuting every conceivable basis upon which an employee's claim might be grounded. I do not share the Court's fear. The Act already contains sufficient accommodation to such legitimate employer concerns: in the form of a *statutory* notice requirement, in the practical manner in which the presumption of compensability has historically

---

[7] Although I do not profess expertise in the administration of the LHWCA, it does seem to me that this provision might have relevance in a case, such as the present one, where the administrative law judge intends to reject the claimaint's principal theory of the case, but where a second theory should be more fully explored before the question of compensation is finally determined. Of course, I would leave questions regarding the application of this and all other regulations governing LHWCA proceedings for the Review Board to resolve on remand. See also 20 CFR § 702.336(a) (1981).

been applied, and in the good-sense application of agency regulations and case management principles by the administrative officials charged with the execution of this Act's provisions. In sum, I am confident, as the Court apparently is not, that any legitimate claim of surprise by the employer in this or in any other case may be fairly considered within the framework of the governing regulations, and resolved in a manner that effectuates the humanitarian purposes of this Act. Rather than rely on some fictive legal analysis to dispose of the case "as a matter of law," by intertwining the problem of notice with the § 20(a) presumption, I would leave all such questions of proof and notice for the agency on remand, as did the Court of Appeals.

## III

As Justice Douglas once had occasion to remind us, "[t]he problems under this Act should rest mainly with the Courts of Appeals." *O'Keeffe* v. *Smith Associates*, 380 U. S., at 371 *(dubitante)*. The Court's treatment of the relatively simple issues raised by the present case underscores the wisdom of that counsel of deference. The Court of Appeals concluded below that the relevant issues were never resolved by the Administrative Law Judge. I can hardly disagree. Therefore, I dissent.