# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-60216

AMERADA HESS CORP; LIBERTY MUTUAL INSURANCE CO

Petitioners

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, US DEPARTMENT OF LABOR; EDDIE D DOVER

Respondents

---

Petition for Review of a Decision and Order of the
United States Benefits Review Board

---

Before REAVLEY, JOLLY, and GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Amerada Hess Corp. and its insurer, Liberty Mutual Insurance Co. (collectively, "Hess"), petition this court to reverse the decision and order of the Benefits Review Board ("BRB") that affirmed the decision of the Administrative Law Judge ("ALJ") to award disability benefits to Eddie Dover under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). For the reasons that follow, we VACATE the ALJ's award of medical expenses for Dover's heart condition and the ALJ's finding that Dover is totally and permanently disabled, and REMAND for a determination of whether Dover's heart condition naturally or unavoidably resulted from the treatment he received for his work-related back

injury, and for reconsideration of whether Dover is totally and permanently disabled. We DENY review of the attorney's fee award.

I.

On July 22, 1997, Dover injured his back and groin while working for Hess as a maritime employee. He saw Dr. Barnett the next day, and again a week later. He attempted to continue working by completing tasks that involved only light duty, but stopped working in May 1998. Hess paid Dover workers' compensation benefits and medical payments under the LHWCA.

Dover was treated initially with pain medication. In November 1997, Dover received a steroid injection from Dr. Baker. He received a series of three lumbar epidural steroid injections in March 1998. In August 1998, Dover had surgery for his back pain. Unfortunately, the surgery did not alleviate the pain. He received another series of three steroid injections in September 1999. There is no indication in the record that Dover received any more steroid injections after September 1999, although Dr. Baker's records refer to a "trigger point injection in left paraspinal region" in notes dated December 28, 1999. Dover testified that he also took steroids orally. By November 1999, Dover had gained forty pounds. Dover also suffered sexual side effects from the steroids that led him to seek another surgery performed by Dr. Ringer in early 2001.[1] He was prescribed medication for hypertension and depression. Dover reached maximum medical improvement following the back surgery on March 13, 2001. In March 2005, Hess reduced Dover's disability payments and refused to pay for various medical treatments.

At the hearing before the ALJ, Dover testified that after receiving steroid injections, he gained a significant amount of weight, going from 160 pounds at

---

[1] Dover does not contest the ALJ's decision that Hess is not responsible for covering his surgery for the sexual side effects because he did not notify Hess before undergoing this surgery.

the time of his injury in July 1997 to 200 pounds in November 1999, and about 240 pounds at the time of the hearing in September 2005. Dover testified that Dr. Baker told him he had to take the steroid injections because, if he did not, Hess would stop paying for his medical treatment. According to Dover, he signed a paper informing him that steroids could cause kidney failure, heart failure, liver failure, and sexual side effects. That paper, however, was not introduced into evidence in the administrative proceedings. Dover also testified that he began having heart problems after his back surgery and that he has had four heart attacks, one of which occurred while he was in Dr. Ringer's office. There is no mention of a heart attack in any of the medical records of Dr. Ringer that were submitted. Dover attributed the heart condition to his weight gain, which he attributed to the steroid injections used to treat his back injury. Dover testified that he saw Dr. Barnett because he was coughing continuously and had something wrong with his lungs. According to Dover, Dr. Barnett found Dover's blood pressure to be elevated and found his heart racing at 120 beats per minute. Dover said that when he told Dr. Barnett he was receiving steroid injections for his back injury, Dr. Barnett said, "steroids will do that to you." Dr. Barnett died before the hearing, and Dover did not introduce any medical records from Dr. Barnett. In his deposition, Dover testified, without record support, that the steroids and Vioxx caused his hypertension and heart problems because he didn't have heart problems until he took "that stuff." He testified that he has trouble sleeping because his back hurts and that it sometimes takes three or four days for him to fall asleep. There are no medical records in the administrative record to indicate that Dr. Barnett ever treated Dover for heart problems.

Dover testified that he takes daily medication for back pain, hypertension, and depression, and that he carries nitroglycerine pills for his heart and monitors his blood pressure at home. Dover testified that Dr. Basi, an internist who also treated Dover for his back pain, tried to refer him for heart treatment,

but when Dover expressed reluctance due to insurance coverage, Dr. Basi had Dover sign a form stating that if Dover "[fell] over dead outside, [his] wife won't sue" the doctor. Dover's exhibits contain a report of Dr. Basi dated November 19, 2004. That report mentions Dover's back pain, the need for an MRI and for blood tests to check liver and kidney function secondary to taking pain medications, and symptoms of depression, probably secondary to chronic back pain, which will require medication. The report, however, contains no mention of any heart problems or conditions and does not mention any need to refer Dover for heart treatment.

Dover's medical records indicate an increase in his blood pressure and the prescription of medication for hypertension, but he did not introduce any medical records or testimony from any of his doctors regarding his alleged heart condition or four heart attacks. Dover testified that he has not sought other employment since his injury.

Dover's wife also testified about Dover's weight gain and heart problems following the steroid injections.

The ALJ found both Dover and his wife credible, and concluded that there was nothing in the record to contradict their testimony regarding Dover's heart condition and treatment.

The ALJ also found that Dover presented substantial evidence to invoke the presumption of causation in § 20(a) of the Act and that Hess presented no evidence to rebut the presumption. Therefore, the ALJ determined that treatment for the heart condition is a reasonable and necessary expense of his compensable back injury.

The ALJ rejected Hess's claim that Dover was only partially disabled and that suitable alternative employment existed. The ALJ concluded that although Dover might be able to work in some capacity, particularly part-time, Hess failed to show that it was more likely than not that Dover could reasonably perform

alternative work. The ALJ therefore concluded that Dover is permanently and totally disabled. The ALJ denied Hess's motion for reconsideration.

On appeal, the BRB affirmed the ALJ's decision. The BRB held that Dover's testimony, supported by the testimony of his wife, that he experienced heart problems post-injury is sufficient to establish the "harm" element of his prima facie case. The BRB noted that Hess did not challenge the existence of Dover's heart condition prior to the issuance of the ALJ's decision, and that Hess, in its motion for reconsideration, did not challenge the credibility of Dover's testimony regarding the existence of a post-injury heart condition. Instead, according to the BRB, Hess acknowledged the existence of the heart condition, but sought reconsideration of the presumed causal link between it and Dover's work injury. The BRB stated that if Dover's heart problems arose as a consequence of the steroid injections he received as treatment for his work injury, the heart problems were work-related. The BRB rejected Hess's contention that the ALJ erred in invoking the presumption based on the lack of scientific proof linking Dover's heart condition to his steroid treatment, holding that such evidence is not necessary for invocation of the presumption. The BRB also determined that Hess had not presented any evidence to rebut the presumption. The BRB affirmed the ALJ's finding that Hess did not establish the availability of suitable alternate employment, and held that the ALJ reasonably concluded that Dover was not capable of full-time employment. It therefore affirmed the award of total disability benefits to Dover. Hess timely petitioned for review. We have jurisdiction to review the BRB's decision pursuant to 33 U.S.C. § 921(c).

II.

Hess presents four issues for review. It argues (1) that the ALJ's finding that Dover's heart condition is causally related to his work injury is not supported by substantial evidence; (2) that the presumption of causation in the

LHWCA does not apply to lay assertions attempting to link secondary and tertiary physical problems (weight gain and a heart condition) to steroid injections used to treat a back injury; (3) that the ALJ 's decision that Dover is permanently and totally disabled is not supported by substantial evidence; and (4) that the ALJ erred by awarding attorney's fees. "This court . . . reviews decisions by the BRB to determine whether it has adhered to its proper scope of review -- i.e., whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." Gulf Best Elec., Inc. v. Methe, 396 F.3d 601, 603 (5th Cir. 2004).

III.

We address Hess's first two issues together, dealing with whether the presumption of causation was properly applied to Dover's claim for the medical expenses of his heart condition, and whether there is substantial evidence to support the ALJ's finding that Dover's heart condition was causally connected to his work-related back injury. Next, we consider whether there is substantial evidence to support the ALJ's determination that Dover is permanently and totally disabled. Finally, we address the issue of attorney's fees.

A.

Hess argues that the presumption of causation does not apply to subsequent, non-work-related conditions that follow an initial work injury, and that there is not substantial evidence to support the ALJ's determination that Dover's heart condition was caused by the steroid injections that were used to treat his back injury. Hess argued before the ALJ and the BRB, as well as in this court, that the lay testimony of Dover and his wife was insufficient to establish a causal link between Dover's heart condition and the steroids he received as treatment for his back injury. Instead, Hess contended, scientific or medical evidence is required to establish that Dover's heart problems were caused by the steroids. Accordingly, Hess preserved for review its argument that

the ALJ and the BRB erred by presuming a causal link based solely on the lay testimony of Dover and his wife.

In determining whether there was error, we begin with the language of the statute. The LHWCA provides that "compensation shall be payable under this chapter in respect of disability . . . of an employee, but only if the disability . . . results from an injury. . . ." 33 U.S.C. § 903(a). "Disability" is defined, in relevant part, as an "incapacity because of injury." 33 U.S.C. § 902(10). "Injury" is defined as an "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury. . . ." 33 U.S.C. § 902(2). An employer must "furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require." 33 U.S.C. § 907(a). The Supreme Court has determined that the phrases "arising out of" and "in the course of" are separate requirements to establish an injury: "the former refers to injury causation; the latter refers to the time, place, and circumstances of the injury." See U.S. Industries/Federal Sheet Metal, Inc. v. Director, Office of Workers' Compensation Programs, 455 U.S. 608, 615 (1982). "Not only must the injury have been caused by the employment, it also must have arisen during the employment." Id. To make a claim for compensation under the LHWCA, an injured employee "must timely file a claim with the Deputy Commissioner." Id. at 613. The claimant must "timely give the Deputy Commissioner and his employer notice of his injury," and "'[s]uch notice . . . shall contain . . . a statement of the time, place, nature, and cause of the injury.'" Id. (quoting 33 U.S.C. § 912(b)).

The presumption of causation that the ALJ applied in this case is set out in Section 20(a) of the LHWCA. It states that "[i]n any proceeding for the

enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary-- . . . [t]hat the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a). To invoke the presumption, a claimant must make a prima facie showing that (1) he suffered a "harm" and (2) a condition of the workplace "could have caused, aggravated, or accelerated" the harm. Conoco, Inc. v. Director, Office of Workers' Compensation Programs, 194 F.3d 684, 687 (5th Cir. 1999). If the claimant presents a prima facie case as to these two elements, then an ALJ may presume that the work conditions caused the harm, unless the employer can rebut the presumption "through facts -- not mere speculation -- that the harm was not work-related." Id. at 687-88. If the employer rebuts the presumption, it drops out of the case and causation is determined by looking at the totality of the evidence. See Port Cooper/T. Smith Stevedoring Co. v. Hunter, 227 F.3d 285, 288 (5th Cir. 2000).

The Supreme Court has stated that it "is clear [that] the [Section 20(a)] presumption applies to the claim." U. S. Industries, 455 U.S. at 612-13 (emphasis added). "A prima facie 'claim for compensation,' to which the statutory presumption refers, must at least allege an injury that arose in the course of employment as well as out of employment." Id. at 615. Once an employee establishes that his injury was work-related, he is entitled to all reasonable and necessary medical expenses related to that injury. See 33 U.S.C. § 907.

It is undisputed that Dover's claim for compensation under the LHWCA (Claimant's Exhibit 7) stated a prima facie case of compensability: his claim is simply that he was injured on the job when he hurt his back and groin. Proof of an injury and an accident at work or conditions at work that could have caused the injury triggers the § 20(a) presumption that the injury is work-related and thus compensable. Accordingly, it is undisputed that the § 20(a) presumption

of causation applies to the back and groin injury described in the claim form that Dover submitted.

Because the statutory presumption applies only to the claim, and because the claim in this case does not reference a work-related heart injury, the ALJ and the BRB erred in applying it to Dover's alleged heart condition. See U.S. Industries, 455 U.S. at 613 ("the presumption by its terms cannot apply to a claim that has never been made"). Instead, the medical expenses of Dover's heart condition are compensable under the LHWCA only if Dover's heart condition "naturally or unavoidably" resulted from the treatment for his work-related injury. See 33 U.S.C. § 902(2).

The ALJ cited the correct standard: that an employer is liable for all medical expenses which are the natural and unavoidable result of a claimant's work injury. However, the ALJ did not find that Dover's heart condition was the natural and unavoidable result of his back injury at work. Instead, the ALJ credited Dover's and his wife's testimony that he suffered from a heart condition and that the heart condition developed after his work injury and steroid injections, and the ALJ then immediately invoked the § 20(a) presumption to link this heart condition with his work conditions simply because the steroid injections could have caused Dover's heart condition. As a result, the ALJ's decision is not in accordance with the applicable law. The question whether Dover's heart condition "naturally or unavoidably" resulted from weight gain attributable to the steroid injections he received as treatment for his back injury is for the ALJ to decide on remand. It appears to us that such a finding would benefit from, if not require, support of medical experts.

Indeed, the ALJ stated that a claimant establishes a prima facie case for compensable medical treatment where a qualified physician indicates that such treatment is necessary for a work-related condition. Yet, no qualified physician testified to that effect. Instead, the ALJ relied on Dover's lay testimony that one

doctor told him "steroids will do that to you" and his testimony that another doctor told him that he might "drop dead." Neither of those doctors testified at the hearing or otherwise offered support for such advice or opinion.

The ALJ found nothing in the record to contradict the testimony of Dover and his wife regarding the cause of Dover's heart condition. The record, however, contains evidence that raises questions, certainly with respect to causation. In Dover's pre-hearing report, he listed Dr. Barnett as a witness. The dates of treatment are specified as July 23, 1997 (the day after Dover's on-the-job injury) and July 30, 1997. According to Dover's pre-hearing report, Dr. Barnett "originally treated claimant for urinary tract infection and cardiac problems; returned one week later for same problem and doctor admitted there was back injury."[2] A similar statement appears in Dover's answers to interrogatories. In these documents, Dover appears to admit that he saw Dr. Barnett for "cardiac problems" on July 23, 1997, the day after his back injury, and months before he received any steroid injections for the back injury. Contrary to the ALJ's conclusion, these statements in Dover's pleadings seem to contradict the testimony of Dover and his wife that his heart problems did not begin until after he received steroid injections for his back injury.

Furthermore, the BRB's decision to affirm the ALJ's ruling reflects its view that to invoke the presumption, Dover had to make a prima facie case by showing (1) a harm (i.e., the mere existence of a heart condition) and (2) conditions of the workplace that could have caused the harm (i.e., that the steroid injections for the back injury simply could have caused the heart condition). Although this mode of analysis is proper for Dover's back injury because it arose "out of and in the course of" his employment, it is improper for

---

[2] Included in Hess's exhibits is a July 23, 1997 prescription for an antibiotic used to treat urinary tract infections. This tends to corroborate Dover's statement that he saw Dr. Barnett for a urinary tract infection and cardiac problems on July 23, 1997, the day after his back injury.

a secondary injury because it skips over the statutory requirement that a secondary injury "naturally or unavoidably" result from the first injury. On remand, the ALJ must determine whether Dover's heart condition "naturally or unavoidably" resulted from his back injury.

In sum, we hold that the statute does not support a presumption that any medical condition that an injured claimant suffers after a work-related injury is caused by the work-related injury. Furthermore, not all "secondary" injuries are covered under the LHWCA simply because the claimant demonstrates a subsequent harm that could have stemmed from the covered injury. Instead, to receive benefits under the LHWCA for a subsequent injury, the claimant must present substantial evidence that the secondary condition "naturally or unavoidably" resulted from the first covered injury, as is required by the

statute.[3]  As we have indicated, the ALJ should consider whether such a finding

---

[3] Although its decisions are not consistent, the BRB has applied this method of analyzing claims for subsequent injuries.  See Bailey v. Bethlehem Steel Corp., 20 BRBS 14, 1987 WL 107384, at *2 (1987) ("When an employee sustains an injury at work which is followed by the occurrence of a subsequent injury or aggravation outside work, employer is liable for the entire disability and for medical expenses due to both injuries if the subsequent injury i[s] the natural or unavoidable result of the original work injury."); see also Ortiz v. Intermarine USA, 2002 WL 31039513, at *23 (2002) (ALJ held that "claimant must establish that medical expenses are related to the compensable injury and are reasonable and necessary," and that employer was "liable for all medical expenses which are the natural and unavoidable result of the work injury, and not due to an intervening cause.")

Our court has likewise held that where there is a subsequent non-work-related event following an initial work injury, the relevant inquiry is whether the second injury resulted naturally or unavoidably from the work injury.  See Mississippi Coast Marine, Inc. v. Bosarge, 637 F.2d 994, 1000 (5th Cir. 1981) ("A subsequent injury is compensable if it is the direct and natural result of a compensable primary injury, as long as the subsequent progression of the condition is not shown to have been worsened by an independent cause."); Atlantic Marine, Inc. v. Bruce, 661 F.2d 898, 901 (5th Cir. 1981) (holding that substantial evidence supported the ALJ's finding that stress and anxiety over back pain from work-related injury caused claimant's heart attack, and citing Bosarge in support of holding that claimant's arteriosclerosis was not a supervening cause of his heart attack); Bludworth Shipyard, Inc. v. Lira, 700 F.2d 1046, 1051 (5th Cir. 1983) (quoting  1 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 1300 (1980)) ("When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.").  Other courts have similarly construed the language of the statute.  See Cyr v. Crescent Wharf & Warehouse Co., 211 F.2d 454, 458 (9th Cir. 1954) (reversing and remanding with instructions to determine "whether the second injury was or was not the natural or the unavoidable result of the first injury").

Crescent Towing & Salvage Co. v. Collins, 228 F. App'x 447 (5th Cir. 2007) (unpublished), is not necessarily inconsistent.  In that case, the claimant suffered a back injury at work and claimed that a later episode of atrial fibrillation was triggered by an epidural steroid injection he received as treatment for the back injury.  Our court stated:

> The fact that Collins suffered an injury is undisputed, and Collins's board-certified cardiologist stated that it is much more likely than not that the claimant's initial episode of atrial fibrillation was triggered by the epidural injection.  His opinion qualifies as substantial evidence to support the ALJ's finding that the Section 20(a) presumption was triggered.

Id. at 449. The cardiologist's testimony was substantial evidence that the episode of atrial fibrillation "naturally or unavoidably" resulted from the claimant's treatment for his work-related back injury.  To the extent that Crescent Towing could be interpreted as approving application of the statutory presumption to the episode of atrial fibrillation, it is inconsistent

requires expert testimony.

B.

We now turn to consider the ALJ's determination that Dover is totally and permanently disabled. In the light of our remand for a determination whether Dover's heart condition naturally or unavoidably resulted from the medication he received for his on-the-job back injury, and because we cannot say conclusively that the ALJ's finding that Dover had a compensable heart condition did not affect the ALJ's determination that Dover is totally and permanently disabled, we VACATE the finding of total and permanent disability and REMAND for further consideration and such further proceedings as the ALJ determines are necessary.

C.

We now turn to consider Hess's final argument, which is that there is no statutory basis for the ALJ's award of attorney's fees, because Hess paid benefits and followed all of the OWCP's recommendations. Dover contends that Hess waived this issue when it failed to appeal the fee award to the BRB.

The ALJ's Decision and Order allowed Dover's attorney 30 days within which to file a fee application. Dover's counsel filed a fee petition seeking $19,094.65. On May 17, 2006, Hess's counsel advised the court, by letter, that the parties had agreed to settle the fee issue for $16,282.15.[4] Based on the parties' agreement, the ALJ ordered Hess to pay the agreed amount to Dover's attorney. Hess did not appeal the ALJ's fee award to the BRB. Accordingly, Hess has waived any issue with respect to the award of attorney's fees. See Ingalls Shipbuilding, Inc. v. Dir., OWCP, 976 F.2d 934, 938 (5th Cir. 1992).

III.

---

with our prior precedent, and we therefore must reject it.

[4] In the same letter, Hess's counsel asked the BRB to issue an order awarding Dover's counsel $6,082.31 for his work before the BRB.

13

For the foregoing reasons, we VACATE the ALJ's award of medical expenses for Dover's heart condition and the ALJ's finding that Dover is totally and permanently disabled, and REMAND for a determination of whether Dover's heart condition naturally or unavoidably resulted from the treatment he received for his work-related back injury, and for reconsideration of whether Dover is totally and permanently disabled. We DENY review of the attorney's fee award.

VACATED in part and REMANDED; REVIEW DENIED in part.

REAVLEY, Circuit Judge, concurring:

I concur in the judgment of the majority but disagree with the conclusion that the presumption created by § 20(a) of the Longshore and Harbor Workers Compensation Act (LHWCA) is inapplicable to Dover's alleged heart condition because Dover's claim was limited to a back injury and the claim did not reference a work-related heart injury. I would apply the presumption as long as Dover presented sufficient evidence to establish a prima facie case, but because Dover did not present such a case on the current record I concur.

The § 20(a) presumption provides that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary– . . . [t]hat the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a). "A prima facie 'claim for compensation' to which the statutory presumption refers, must at least allege an injury that arose in the course of employment as well as out of employment." U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., OWCP, 455 U.S. 608, 615–16, 102 S. Ct. 1312, 1318 (1982).

Dover claimed that he suffered a work-related back injury, and he testified that the steroid treatment for his back resulted in his heart condition. We have recognized that "'"[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.'" Bludworth Shipyard, Inc. v. Lira, 700 F.2d 1046, 1051 (5th Cir. 1983) (quoting 1 A. Larson, THE LAW OF WORKMEN'S COMPENSATION § 1300 (1980)). Because Dover's claimed back injury indisputably arose out of his employment, any injury resulting from treatment for that injury should also be presumed to have arisen out of the employment and the primary injury. See Mattera v. M/V MARY ANTOINETTE, 20 BRBS 43 (1987) (back injury sustained during

vocational testing following a compensable arm injury was covered under the LHWCA because the employee "would not have been undergoing vocational rehabilitation testing if he had not injured his arm during the course of his employment, and thus, we hold that the alleged back injury also arose out of and in the course of his employment"); Weber v. Seattle Crescent Container Corp., 19 BRBS 146 (1986) (a neck injury sustained during a medical examination for a work-related hearing loss "necessarily arises out of and in the course of employment").

The problem in the instant case is the proof that Dover's secondary injury (the heart condition) resulted from the treatment for his primary, work-related injury (the back injury). Dover was asked at the hearing before the ALJ if he had any heart problems prior to the accident on July 22, 1997. He responded, "No." He was then asked when he started having heart problems. Dover replied as follows:

> It was after my surgery. Now I went to Dr. Barnett there because I had something wrong with my lungs there, a continuous coughing. I went in there to get something, some medication for it. And he checked my blood pressure and it's way up there and my heart's a racing real fast, a hundred; I think about a 120 beats a minute or something like that. He told me it wasn't – it wasn't my blood pressure. He said, "That's your heart doing that." And I told him all the steroid injections I had and he said, "Steroids will do that to you."

In finding that Dover's heart condition was work-related, the ALJ relied in part on Dover's testimony about Dr. Barnett's confirmation that the steroids could have caused his heart problems. The ALJ found that nothing in the record contradicted Dover's testimony. But the only record evidence concerning Dr. Barnett shows that Dover saw Dr. Barnett on July 23 and July 30, 1997, before Dover received steroid injections. On this record, Dover could not have told Dr. Barnett about the steroid injections and Dr. Barnett could not have stated that

steroids caused Dover's heart condition. In addition, as the majority opinion notes, Dover's answers to interrogatories stated that Dr. Barnett treated him for a urinary tract infection and cardiac problems, suggesting that any heart condition may have predated the back injury.

The ALJ, as the fact finder, may resolve conflicts in the evidence. *Atlantic Marine, Inc. v. Bruce*, 661 F.2d 898, 900 (5th Cir. 1981). Although the ALJ here found Dover to be a credible witness, there is no indication that he took conflicts in the evidence into account. Based on the current record, Dover failed to show a sufficient nexus between the steroid treatment for his back injury and his secondary heart condition to establish a prima facie case. Therefore, I concur in the judgment to vacate the order of the BRB affirming the ALJ.