# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2011

No. 10-60686
Summary Calendar

Lyle W. Cayce
Clerk

MICHAEL T. GOLD,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; DOLPHIN SERVICES, L.L.C.,

Respondents.

On Petition for Review of a Judgment
of the Benefits Review Board
BRB No. 09-0774

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Michael T. Gold petitions this court for review of a decision of the Benefits Review Board affirming an administrative law judge's denial of his claim for workers' compensation under the Longshore and Harbor Workers' Compensation Act.[1]  We have jurisdiction over the petition pursuant to 33 U.S.C. § 921(c).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 33 U.S.C. §§ 901-950.

No. 10-60686

Because the Benefits Review Board followed the correct legal standard and adhered to its proper scope of review, we affirm.

**I**

Gold worked for Dolphin Services, L.L.C. as an offshore rigger. He claims that he was injured while performing his duties on November 9, 2007. According to Gold, he woke up on November 10 with back pain, reported his injury to a supervisor, and filled out an accident report with a supervisor. He did not see the on-board medic, and he returned to work after filling out the accident report. He continued to work between twelve and sixteen hours a day as a rigger, work which required repetitive bending, stooping, and lifting. Gold claims that his back pain continued throughout this period. He returned home for the Thanksgiving holidays on November 19; he did not see a physician while on shore, despite having health insurance and access to a public hospital.

On November 26, he returned to his work offshore and continued working in the same position as a rigger through December 19, when he returned home for the Christmas holidays. He claims that the tension in his back was "easing up" during this time, but that he still felt stiffness and mild pain. He saw his family physician during the Christmas holidays for a rash on his face but did not report any back pain.

Gold returned to work in January of 2008 in Dolphin's on-shore yard, carrying boxes of ceramic tile and laying tile. He testified that he felt a mild burning pain in his lower back during this time. His employment was terminated on January 17 because he reported to work with alcohol in his system. Gold eventually went to an emergency room on March 11, 2008, reporting back and neck pain. The records from that visit show that Gold had sciatica and degenerative changes in his spine, which was otherwise normal.

Gold filed his first LS-203, the U.S. Department of Labor's claim form for employee compensation, on March 12, giving December 6, 2007, as the date of

injury.  He filed a second and then a third LS-203 on April 23, listing October 2007, and then December 7, 2007, as the dates of injury.  Gold's attorney, on his behalf, filed a fourth and final LS-203 on July 25, 2008, which listed November 9, 2007, as the date of his injury.  A few days after Gold filed the fourth LS-203, Dolphin filed to controvert Gold's right to benefits and refusing medical care and compensation.

When Gold and Dolphin were unable to resolve their issues during an informal conference, the District Director referred the matter to the Office of Administrative Law Judges for a formal hearing.  The Administrative Law Judge (ALJ) who heard the case found that Gold's credibility was suspect and was not therefore sufficient to establish that an injury occurred.  The ALJ also found that no medical evidence supported a finding that Gold suffered an injury under the Longshore and Harbor Workers' Compensation Act (LHWCA or Act).  In the alternative, the ALJ found that even if Gold could show he sustained an injury, there was insufficient evidence to establish that any work-related accident, exposure, event, or episode occurred that could have caused the injury.  The ALJ based this finding on the many internal inconsistencies in Gold's statements, as well as the testimony from others that contradicted Gold's testimony.  The ALJ therefore denied Gold's claim for benefits under the LHWCA.

Gold appealed the ALJ's decision to the Benefits Review Board (BRB or Board).  The BRB concluded that there was "evidence in the record" to support the ALJ's determination that Gold had not established that he sustained the harm alleged.  However, the Board also determined that the test results from Gold's physician visits "arguably" established that he sustained a "harm."  But, the BRB continued, any error by the ALJ "in this regard [was] harmless as . . . claimant must also establish that an accident occurred at work or that working conditions existed which could have caused his back condition" in order

No. 10-60686

to "establish the compensability of his claim." The BRB concluded that the ALJ committed no error in finding that Gold had not established the accident or working conditions element, and that the denial of benefits was supported by the evidence and the law. The Board therefore affirmed the ALJ's decision. On appeal to this court, Gold claims that the decisions of the BRB and ALJ contain errors of law regarding the proper application of relevant provisions of the LHWCA and implementing regulations.

## II

The BRB must "accept the findings of the ALJ if they are rational and supported by substantial evidence in the record considered as a whole."[2] In reviewing the BRB's decision, this court's "only function is to correct errors of law and to determine if the BRB . . . adhered to its proper scope of review."[3] In other words, "once the BRB affirms an order of the ALJ, we need only inquire whether the BRB correctly concluded that the ALJ's order was supported by substantial evidence on the record as a whole and is in accordance with the law."[4] We review all questions of law de novo; "the ALJ, as sole factfinder, is entitled to consider all credibility inferences and his selection among inferences is conclusive if supported by the evidence and the law."[5]

## III

Gold argues on appeal that the decisions of the ALJ and BRB contain two errors. First, he argues that the ALJ and BRB erred as a matter of law under 33 U.S.C. § 907 and 20 C.F.R. § 702.403 by failing to order the authorization and

---

[2] *Gulf Best Electric, Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004).

[3] *Bollinger Shipyards, Inc. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 604 F.3d 864, 870 (5th Cir. 2010).

[4] *Id.* at 871 (internal quotation marks, citation, and brackets omitted).

[5] *Id.* (internal quotation marks, citation, and brackets omitted).

4

No. 10-60686

payment for Gold's choice of physicians.  Second, Gold claims that the ALJ and BRB incorrectly determined that the presumption afforded claimants under 33 U.S.C. § 920(a) did not apply.

## A

Gold argues that the LHWCA gives an employee claiming to be injured a right to freely choose his own treating physician, that this right vested when Gold gave verbal notice of his injury to his employer, and that the BRB erred in determining that he had not established this right.  We assume without deciding that Gold's verbal statement to a supervisor that he was injured constituted "notice" under the statute.

Gold argues, in effect, that his mere allegation of injury invokes the benefits and presumptions afforded to him as an employee under the Act.  Gold is correct that the LHWCA gives an injured employee the right to choose an "attending physician . . . to provide medical care" under the Act.[6]  But the burden of persuasion to prove coverage and right to compensation under the Act is on the claimant, and Gold did not meet this burden, as discussed below.[7]

This court has previously held that an employee must establish that "his injury was work-related" to be "entitled to all reasonable and necessary medical expenses related to that injury."[8]  It follows that the claimant must first establish that the harm alleged meets the Act's definition of "injury": "accidental injury or death arising out of and in the course of employment."[9]  Mere allegation

---

[6] *See* 33 U.S.C. § 907(b).

[7] *See Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 280-81 (1994) (rejecting the "true doubt" rule, under which the burden of persuasion, and not merely the burden of production, shifted to the party opposing the LHWCA benefits claim).

[8] *Amerada Hess Corp. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 543 F.3d 755, 761 (5th Cir. 2008) (citing 33 U.S.C. § 907).

[9] 33 U.S.C. § 902(2).

No. 10-60686

of injury is not sufficient to fulfill this burden,[10] despite Gold's assertions otherwise. Therefore, Gold's right to a physician of his choosing did not vest upon his mere notice to his employer, but required proof that he was injured as defined by the statute. The BRB's legal interpretation on this matter was correct.

Gold's claim that the decisions of the ALJ and the BRB violated his Fifth Amendment due process right by not authorizing treatment by his chosen physician fails for the same reasons.

**B**

Gold also argues that the decisions of the BRB and the ALJ misapplied the LHWCA presumption under 33 U.S.C. § 920(a). Gold's argument on this point is also unavailing.

The LHWCA provides a presumption of compensation,[11] often referred to as the "Section 20 presumption," in favor of a claimant who can establish a prima facie case of injury; that is, that the claimant can prove that "(1) he suffered a harm and (2) and a condition of the workplace could have caused, aggravated, or accelerated the harm."[12] Once the presumption is invoked, the burden shifts to the employer to rebut it "through facts . . . that the harm was not work-related."[13]

The ALJ found that Gold had not established the first element of the prima facie case and, in the alternative, that he also failed to establish the

---

[10] *See Amerada Hess Corp.,* 543 F.3d at 761; *cf. Turner v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 334 F. App'x 693, 696 (5th Cir. 2009) (citing *Amerada Hess Corp.*, 543 F.3d at 761) (holding that the claimant "bore the burden to prove—not merely allege—that he suffered" a work-related injury in order to invoke the statutory presumption).

[11] 33 U.S.C. § 920.

[12] *Amerada Hess Corp.*, 543 F.3d at 761 (internal quotation marks and citation removed).

[13] *Id.* (emphasis removed).

No. 10-60686

second prong.  Thus, the ALJ found that Gold was not entitled to either the Section 20 presumption or compensation under the LHWCA.  The BRB found that the law and substantial evidence supported the ALJ's alternative finding—that Gold did not establish the second element of the prima facie case—and affirmed the denial of benefits.

Gold contends that he established both prongs of the prima facie case of injury and was therefore entitled to the Section 20 presumption.  The ALJ's determination that Gold's testimony on both prongs of the prima facie case was not credible, and that the credible evidence did not support his allegations, is supported by the evidence in the record.  Gold's contention that the ALJ made incorrect credibility determinations in its finding otherwise is unavailing:  the ALJ, as the "sole factfinder, is entitled to consider all credibility inferences and his selection among inferences is conclusive if supported by the evidence and the law."[14]  Gold also argues that an injury occurs under the LHWCA if something simply goes "wrong with the human frame,"[15] and that the evidence he presented to the ALJ supported a finding that he was injured under that definition.  Gold misstates the law on this point.  As the Supreme Court has held, the LWHCA requires compensation not because of the "mere existence of a physical impairment," but only when the injury arises "out of" and "in the course of" employment.[16]  Neither the evidence in the record, as found by the ALJ, nor the law support Gold's argument.

---

[14] *Bollinger Shipyards, Inc. v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 604 F.3d 864, 871 (5th Cir. 2010) (internal citation, quotation marks, and brackets omitted).

[15] *See Wheatley v. Adler*, 407 F.2d 307, 313 (D.C. Cir. 1968).

[16] *U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 455 U.S. 608, 615 (1982) (discussing 33 U.S.C. § 902(2)).

No. 10-60686

Gold also contends that the ALJ and the BRB unlawfully required him to prove that an accident occurred at a particular time in order to prove the second prong of the prima facie case.[17]   Neither the ALJ nor the BRB required him to prove such an occurrence.  Rather, they determined that, presuming he had shown he suffered a harm, he had not presented sufficient evidence linking that harm to his employment activities on the day he claimed he incurred the injury. The BRB properly concluded that the ALJ's determination that Gold had not established the second prong of the prima facie case was supported by sufficient evidence and the law.

*      *      *

We therefore AFFIRM the decision of the Benefits Review Board.

---

[17] *See H.B. Zachry Co. v. Quinones*, 206 F.3d 474, 481 (5th Cir. 2000) (affirming a decision by the ALJ that the claimant had established a "prima facie case by showing that working conditions existed that could have caused the injury").