

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2008

# AG Ship Maintenance v. Director OWCP

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2875

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"AG Ship Maintenance v. Director OWCP" (2008). *2008 Decisions.* Paper 304.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/304

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-2875 and 07-3830
_____

A.G. SHIP MAINTENANCE;
AMERICAN HOME ASSURANCE COMPANY,
Petitioners

v.

PIETRO BRUNETTI; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION PROGRAMS
UNITED STATES DEPARTMENT OF LABOR,
Respondents
_____

Petition for Review
from the United States Department of Labor
Benefits Review Board

BRB-1: 07-0746 *(BRB-1:05-0999)*
Administrative Law Judge:  Honorable Robert D. Kaplan
_____

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2008

Before:  RENDELL, SMITH, <u>Circuit</u> <u>Judges</u>,
and POLLAK, <u>District</u> <u>Judge</u>*.

(Filed:  October 30, 2008)

_____

*Honorable Louis H. Pollak, Senior District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

RENDELL, *Circuit Judge*.

A.G. Ship Maintenance Corp. ("A.G. Ship"), the employer in this workers' compensation suit, and American Home Assurance Company ("American Home"), A.G. Ship's insurance carrier, petition for review of the July 26, 2007, order of the Benefits Review Board (the "Board") affirming the August 19, 2005, order of Administrative Law Judge Robert D. Kaplan (the "ALJ") awarding disability benefits to respondent Pietro Brunetti ("Brunetti"), who worked as a lasher for A.G. Ship.

On December 19, 2000, while lifting three heavy lashing bars, Brunetti experienced a serious nosebleed and subsequent symptoms of high blood pressure, dizziness, nausea, and abnormal right eye movement. The eye abnormality, in which Brunetti's right eye moves inward involuntarily, affects his balance, gives him blurry and double vision, and makes him disoriented. The ALJ found that Brunetti's eye disorder was work-related and that he was totally disabled.

The petitioners argue that (1) the ALJ's finding that Brunetti's injury was work-related was not supported by substantial evidence because it rested on an unreliable and speculative medical opinion, and (2) the ALJ's finding that Brunetti is incapable of alternative employment was not supported by substantial evidence because it is at odds

2

with the petitioners' vocational and medical opinions.

We have jurisdiction pursuant to the Longshore and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C. § 921(c), which provides for judicial review of Board decisions. Under the Act the Board must treat the ALJ's findings of fact as conclusive if those findings are supported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Del. River Stevedores, Inc. v. Director, OWCP*, 279 F.3d 233, 241 (3d Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). In reviewing the Board's decision, we must examine whether (1) the Board adhered to the applicable scope of review; (2) the Board committed any errors of law; and (3) the ALJ's findings are supported by substantial evidence on the record as a whole. *Id.* (citing *Crum v. Gen. Adjustment Bureau*, 738 F.2d 474, 477 (D.C. Cir. 1984)). For the reasons stated below, we will affirm.

## DISCUSSION[1]

### I. Finding of Work-Related Injury

The petitioners first argue that the ALJ's finding that Brunetti's injury was work-related was based on the unreliable, speculative medical opinion of Dr. Floyd A. Warren,

___

[1]As we write solely for the benefit of the parties, who are familiar with the facts and procedural history of this case, we confine our discussion to the legal issues presented and include only those facts necessary to our disposition.

a neuro-opthalmologist who evaluated and treated Brunetti from 2001 to 2005. They say that the ALJ relied exclusively on Dr. Warren's opinion and that all of the other medical evidence showed no connection between Brunetti's injury and his employment, and that Dr. Warren's diagnosis was speculative because he could not determine an organic cause for Brunetti's abnormal eye movement. Further, petitioners argue, the ALJ improperly relied on a "temporal nexus" between the December 19, 2000, incident and Brunetti's symptoms. Therefore, the petitioners say, the ALJ's determination was not supported by substantial evidence, and the Board erred when it affirmed the ALJ's decision.

The ALJ first performed an analysis under § 20(a) of the Act, which provides for a presumption that an injury is causally related to employment if a claimant can show that he suffered an injury and working conditions existed which could have caused the harm. 33 U.S.C. §920(a); *U.S. Inds./Federal Sheet Metal v. Director, OWCP*, 455 U.S. 608, 612 (1982). The employer can rebut the presumption by presenting specific evidence to sever the potential connection between the injury and the job. *Swinton v. J. Frank Kelly, Inc.*, 554 F.2d 1075, 1082 (D.C. Cir. 1976). The ALJ found that Brunetti was entitled to the § 20(a) presumption, but that A.G. Ship had provided sufficient evidence to rebut it. Therefore, he looked to the entire record to determine whether there was a causal link between Brunetti's employment and his eye abnormalities, and concluded that there was such a link, based primarily on the medical opinions in the record.

Four ophthalmologists evaluated Brunetti: Drs. Warren, Zee, Kapoor, and

Frohman. The ALJ gave particular weight to Dr. Warren's opinion because he treated Brunetti for several years and evaluated Brunetti's subjective complaints in the context of objective diagnostic testing and his prior medical history. He was also familiar with which therapies had been attempted to alleviate Brunetti's symptoms. Dr. Warren connected Brunetti's nosebleed, hypertension, and dizziness on December 19, 2000, to an ischemic event in the brainstem that then caused the eye problem, although he acknowledged that there was no radiological evidence of an ischemic event. Dr. Kapoor noted the severity of Brunetti's symptoms, and wrote that although the precise etiology of the symptoms was unclear, it was clear that they started after his workplace injury.

None of the medical opinions pointed to a precise cause of Brunetti's symptoms, and all of the evaluating physicians acknowledged that Brunetti had no such symptoms before December 19, 2000. Dr. Zee recommended additional testing, including psychiatric counseling, but did not say whether he thought that Brunetti's symptoms might be due to a psychiatric condition. Although Dr. Frohman suggested that Brunetti's condition was psychiatric in nature, no psychiatrist ever provided an opinion. The ALJ concluded that Dr. Zee's opinion was unclear as to the causation of Brunetti's symptoms, and that Dr. Frohman, an ophthalmologist, was not qualified to make a psychiatric diagnosis. Taking all of the medical opinions into consideration, the ALJ gave the most weight to Dr. Warren's opinion.

The Board considered the ALJ's findings and the evidence in the record, and

concluded that his decision was supported by substantial evidence. It found that the ALJ appropriately discussed all of the relevant evidence in the record, and acted within his discretion in giving the most weight to Dr. Warren's opinion. The Board rejected A.G. Ship's contention that Dr. Warren's opinion was too speculative to support a finding of causation, saying that the ALJ had "rationally credited [Dr. Warren's] causation conclusion as it was explained in terms of the overall facts in this case." (Board Opinion n.2, App. 15). The Board also rejected the petitioners' arguments about the ALJ's reliance on the "temporal nexus" between the December 19, 2000, incident and Brunetti's symptoms, noting that the standard called for the ALJ to look at the record as a whole, and the temporal nexus was not the only evidence he considered. (Board Opinion n.3, App. 15).

In light of the Board's careful review of the ALJ's thorough opinion, we find that on the issue of the causal relationship between Brunetti's employment and his injury, the Board adhered to the applicable scope of review and did not commit any errors of law. The ALJ examined the record as a whole and his findings were supported by substantial evidence.

## II. Finding of Total Permanent Disability

The petitioners also challenge the ALJ's finding that Brunetti was totally, rather than partially, disabled, and argue that the Board erred in affirming the ALJ's decision. To establish a prima facie case of permanent total disability, a claimant must prove that

6

he is unable to perform his previous job because of a work-related injury. The burden then shifts to the employer to show that there are other suitable jobs available to the claimant. *See McCabe v. Sun Shipbuilding & Dry Dock Co.*, 602 F.2d 59, 62 & n.7 (3d Cir. 1979); *Am. Stevedores, Inc. v. Salzano*, 538 F.2d 933, 935-36 (2d Cir. 1976). The employer can carry this burden by showing suitable alternative employment in the claimant's geographical area that the claimant is capable of performing, considering his age, work experience, and physical restrictions, and that the claimant could secure if he diligently tried. *Wilson v. Crowley Maritime*, 30 Ben. Rev. Bd. Serv. 199, 203 (1996). If the employer can show suitable alternative employment, then the claimant is not totally disabled.

A.G. Ship acknowledged that Brunetti was not able to return to his job as a lasher, but argued that suitable alternative employment was available. The ALJ examined reports from two vocational experts, Dr. Rosenberg and Ms. Havassy, and found that Brunetti had demonstrated an inability to perform his job and that A.G. Ship did not show suitable alternative employment. Dr. Rosenberg, Brunetti's vocational expert, reviewed Brunetti's medical records from 2000 to 2005 and his disability award from the Social Security Administration, interviewed him, and performed educational testing that showed Brunetti's reading and math skills to be below high school level. Dr. Rosenberg said that Brunetti had a "strong, continuous work ethic" and that he was "convinced he would work if he were able to," but that because of his visual impairment and inability to orient

to his environment, Brunetti was totally disabled. (App. 737).

Ms. Havassy interviewed Brunetti and reviewed his medical records and came to a different conclusion: she said that Brunetti could perform sedentary to light work as long as it did not involve lifting heavy objects, heights, or operating heavy machinery. Her labor market survey included a number of possible jobs, including working at a car dealership, as a sales associate at Home Depot, and as a dispatcher for an alarm company. Ms. Havassy acknowledged that she had not reviewed Dr. Warren's report from February 5, 2005, when he wrote that Brunetti was totally disabled from gainful employment.

The ALJ noted that Dr. Rosenberg examined Ms. Havassy's report and agreed with her that without his severe eye problems Brunetti would probably be able to work in some of the customer service capacities Ms. Havassy had suggested. However, Dr. Rosenberg wrote, Brunetti could not perform these jobs because his visual impairment meant that he could not orient to his environment. None of the jobs would have allowed Brunetti to keep his head in a constant, still position; without this stability, Brunetti suffers dizziness, disorientation, and the turning in of his right eye. Ms. Havassy considered Brunetti to have a "minimal visual problem," which Dr. Rosenberg argued did not represent the actual severity of Brunetti's impairment. (App. 738). Dr. Rosenberg's findings were also supported by some of the medical opinions in the record. Dr. Warren concluded that Brunetti was totally disabled, and Dr. Kapoor noted in her report that

8

Brunetti was "unable to work in any capacity" because of the persistent intensity of his symptoms, which were made worse with motion. (App. 147).

The ALJ found Dr. Rosenberg's report and interpretation of Brunetti's situation to be more accurate and persuasive than Ms. Havassy's. He pointed out that Ms. Havassy's report did not take into account the frequency of Brunetti's symptoms, which could impair his reliability as an employee, or the fact that Brunetti and his wife had already made many household changes to accommodate his condition. The ALJ also found that Ms. Havassy underestimated Brunetti's physical limitations, and that all of the jobs suggested by Ms. Havassy were customer service-based, which would be very difficult for Brunetti, given his frequently occurring symptoms and his disorientation when there is a great deal of activity around him or when he talks on the phone. In addition, the ALJ noted that Brunetti had no experience in an office setting and was unfamiliar with computers and paperwork, having worked in shipyards his entire adult life. The ALJ found that A.G. Ship did not meet its burden of establishing that suitable alternative employment was available, and concluded that Brunetti was totally, permanently disabled.

The Board found that the ALJ had rationally credited Dr. Rosenberg's testimony, in conjunction with the opinions of Dr. Warren and Dr. Kapoor, that Brunetti was incapable of employment because of his eye disorder. The Board also found that the ALJ rationally rejected the positions identified by Ms. Havassy because they "fall beyond the scope of claimant's overall capabilities." (App. 16). We find that on the issue of the

9

severity of Brunetti's disability and suitable alternative employment, the Board adhered to the applicable scope of review and did not commit any errors of law. The ALJ examined the record as a whole and his findings were supported by substantial evidence.

### III. Conclusion

For the reasons set forth above, we will DENY the Petition for Review.

_____